### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: JEFFREY B. CLARK, | Case No. _____ |
| A member of the Bar of the District of Columbia Court of Appeals (Bar No. 455315) | (Related to Case No. 1:22-mc-00096-RC) |
| | Judge _____ |
| D.C. Board of Professional Responsibility Docket Nos. 22-BG-059 & 22-BD-039 Disciplinary Docket No. 2021-D193 | On removal from the D.C. Court of Appeals |

### RESPONDENT JEFFREY B. CLARK'S SECOND NOTICE OF REMOVAL TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

PLEASE TAKE NOTICE:

Pursuant to 28 U.S.C. §§ 1331, 1441, 1442, 1446, and 1455, Jeffrey B. Clark ("Respondent") hereby gives notice and removes this quasi-prosecution case from the District of Columbia Court of Appeals ("DCCA") to the United States District Court for the District of Columbia. It follows in the wake of Respondent having removed, on October 17, 2022, the main case from the DCCA's adjunct bodies, the District of Columbia Board of Professional Responsibility ("Board") and the Board's assigned Hearing Committee.

This Second Notice of Removal should not have been necessary. It results only from the D.C. Office of Disciplinary Counsel ("ODC") having filed, in the local court from

which the action was removed to this Court, an improper post-removal motion to enforce an October 6, 2022 subpoena against Respondent. ODC did this even though the October 17, 2022 First Notice of Removal had the effect of removing the entire criminal-civil hybrid case to this Court and ending supervisory jurisdiction (for instance to enforce subpoenas) on the part of the DCCA, unless and until this case is remanded (including after any ensuing appeals) to the DCCA or its adjunct bodies.

Respondent's counsel signs this Notice of Removal pursuant to Rule 11 of the Federal Rules of Civil Procedure and Respondent pleads the following in accordance with the parallel requirements of 28 U.S.C. § 1446(a) and § 1455(a) for a "short and plain statement of the grounds for removal":

## <u>Introduction</u>

1. This is a paradigmatic case for removal under the federal officer removal statute, 28 U.S.C. § 1442—the statute that forms the principal, but not exclusive, basis for removal herein. Respondent is a former high-ranking federal officer at the United States Justice Department. Specifically, Respondent was a Senate-confirmed Assistant Attorney General for the Environment & Natural Resources Division from November 1, 2018 to January 14, 2021, as well as the former Acting Assistant Attorney General of the United States for the Civil Division from September 5, 2020 to January 14, 2021.

2. On October 17, 2022, Respondent previously removed to this Court the disciplinary

charges brought against him by the D.C. Disciplinary Counsel, who heads up ODC. That is case number 1:22-mc-00096-RC pending in this Court.

3. The prior Removal also specifically encompassed a subpoena for the production of documents dated October 6, 2022 served upon Respondent (the "Second Subpoena"). *See* Case No. 1:22-mc-00096-RC, Dkt. #1, ¶¶ 15-18, 21, 26, 57-59.

4. Respondent now brings this ***second*** Notice of Removal because, notwithstanding the prior Removal on October 17, 2022, ODC filed a motion to enforce the Second Subpoena in the District of Columbia Court of Appeals ("DCCA") (not this Court) on October 26, 2022—***nine days after the first removal***. ODC filed the motion to enforce despite the prior removal of the Charges ***and of the Second Subpoena***, and despite the rule of 28 U.S.C. § 1446(d) that once notice of removal is filed as to a civil action (defined by 28 U.S.C § 1442(d)(1) to include a subpoena) with the clerk of the "State court" and notice is given to adverse parties, "the State court shall proceed no further unless and until the case is remanded." There has been no remand as of the date of this filing.[1]

5. Note as well that 28 U.S.C. § 1442(d)(1) defines "civil action" and "criminal

---

[1] As the Court is aware from the First Removal, Respondent takes the position that under DCCA precedent, District bar disciplinary proceedings constitute criminal-civil hybrid matters and thus the civil case removal rule in 28 U.S.C. § 1446(d) is the proper rule to apply (read in light of the need to harmonize the civil with criminal removal statutes) to bar further action in the court removed from "unless and until the case is remanded."

prosecution" not only to include "a subpoena for testimony or documents" but directs that such actions "include any proceeding (***whether or not ancillary to another proceeding***)." (Emphasis added.) This means the fact that the Charges initiating the case were removed in the First Removal is no barrier to a subsequent removal, even though this Second Removal of the Second Subpoena is ancillary to the First Removal of the entire action (which had already included removal of the Second Subpoena). The text of Section 1442(d)(1), in other words, anticipates situations like this one in which a subsequent removal can relate to, *i.e.*, be "ancillary to another proceeding."

6.   The Second Subpoena and the Motion to Enforce (Exhibit A-3) connect directly to the Charges that were previously removed. The Second Subpoena seeks documents that ODC wants to review so that it can assess its own view of the propriety of advice Respondent is alleged to have prepared and delivered, ***while a federal officer***, though that advice was never presented to any court or other body that could be characterized as a tribunal. Instead, the alleged advice was given exclusively within the confines of the Justice Department and/or inside the sanctum of the Oval Office of the White House, where it was put to the President of the United States himself.

7.   No State possesses the power to supervise the internal operations and deliberations of any branch of the federal government. The Supremacy Clause and federal officer removal statutes, 28 U.S.C. §§ 1442 and 1446(g), ensure the preservation of the

federal structure by vesting Article III courts with the jurisdiction and responsibility to adjudicate the federal statutory claims, constitutional claims, and other defenses of individuals entrusted with federal authority.  In this case, it is the District of Columbia government, a creature of Congress created pursuant to Congress's plenary powers under the Seat of Government Clause, U.S. Const. art. I, § 17, that claims the power to supervise the internal operations and deliberations of the Executive Branch. This case is, therefore, a direct attack on the fundamental principle of separation of powers (instead of federalism, which would apply if a state bar were trying to regulate Respondent's conduct inside the federal Executive Branch). ODC is thus a federal office that traces its power and existence to the Legislative Branch. As an Article I court, the DCCA has no, or at best only limited authority (28 U.S.C. § 530B),  to supervise the conduct of attorneys who control the litigation of the federal government and, like Congress itself, the DCCA has no authority whatsoever to discipline a federal counselor to the President based on Disciplinary Counsel's own—or Congress's—disagreement with the substance or development of advice and recommendations concerning Department of Justice law enforcement policy. In this case, the Charges filed by ODC at the behest of a single Senator and the Second Subpoena seek both privileged documents and testimony that explore the legal, policy, factual, and political basis for advice that Respondent is alleged to have given to the Acting Attorney General of the United States, to the Principal Associate

Deputy Attorney General (the "PADAG"), who at the time was performing the duties of the Deputy Attorney General, and, most importantly, to the President of the United States.

8. Accordingly, ODC, whether viewed separately or as an investigative and prosecutorial agency of the DCCA, has no jurisdiction to intrude upon, politicize, or second-guess advice given to the President that, under any reading of the D.C. Rules of Professional Conduct, were consistent with Respondent's duties. Nor does it have the authority to use its subpoena power to advance the political agenda of a U.S. Senator who could not muster the votes from his colleagues on the U.S. Senate Judiciary Committee to wield the Committee's own subpoena power.

9. Any request to remand this case should thus be denied. Instead, this case should be consolidated with the First Removal, Case No. 1:22-mc-00096-RC, and adjudicated in a more orderly fashion than has occurred up to this point in the DCCA and its adjuncts. Specifically, the *first test* should be whether the Board even has jurisdiction to allow ODC to serve and compel compliance with the Second Subpoena. Removal is especially necessary because the DCCA has turned this ordinary practice on its head and determined to hold a factual hearing calling witnesses against Respondent, *even before* the disputed issue of jurisdiction is addressed at the Hearing Committee level of the Board's disciplinary process. Nor has the full Board or the DCCA, an Article I court, addressed jurisdiction. As a result,

this case presents serious separation of powers issues because it is functionally an attempt by Article I bodies to interfere in internal deliberations within the confines of the Article II Executive Branch.

10. Worse yet, the Board has refused to adhere to binding Supreme Court law or even to its own precedent as to the unavoidable need for jurisdictional challenges to be addressed *at the outset of any case*. It is similarly unclear whether the DCCA, were it to entertain the Motion to Enforce the Second Subpoena, would conform itself to Supreme Court law. With respect to the Charges, the Board is, in essence, relying on an assumption of "hypothetical jurisdiction" to hold a factual hearing prior to establishing the existence of jurisdiction. *Contrast, e.g., Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999) (threshold jurisdictional questions must be resolved before the merits); *Steel Co.* v. *Citizens for Better Env't,* 523 U.S. 83, 94-95 (1998) (requirement to establish subject matter jurisdiction as a threshold matter is "inflexible and without exception" and, for that reason, the Supreme Court rejected the doctrine of "hypothetical jurisdiction"); *see also UMC Dev. LLC v. District of Columbia*, 120 A.2d. 37, 42 (D.C. 2015) (standing is a matter posing "a threshold jurisdictional question which must be addressed prior to and independently of the merits of a party's claim."). And the purpose of the Second Subpoena that ODC is trying to have the DCCA enforce is to assist adjudication of the Charges that the Board wrongly determined could go forward without a threshold jurisdictional inquiry first being

resolved in ODC's favor.

## Background and Procedural Requirements

11. Jeffrey B. Clark is Respondent in the matter currently styled "*In the Matter of Jeffrey B. Clark, Respondent,*" pending in the DCCA as Case No. 22-BG-059, which relates to Disciplinary Docket No. 2021-D193 and Board of Professional Responsibility ("Board") Docket No. 22-BD-039 (collectively, the "Deemed-State Court Action").[2]

12. Out of an abundance of caution, Respondent fully incorporates by reference all of the First Removal into this Second Removal. Respondent does this so that this Second Removal is shorter in length than the First Removal.

13. In connection with the First Removal, Respondent had suggested that these matters would best be captioned "Hamilton P. Fox, III, Disciplinary Counsel, Petitioner v.

---

[2] The District of Columbia is not a "State." However, it **can sometimes be** deemed the equivalent of a "State" for certain purposes, *i.e.,* when Congress explicitly so provides. And Congress has so provided here as to the exercise of removal jurisdiction. *See* 28 U.S.C. § 1442(d)(5) (defining the District as a State for removal purposes); *see also* 28 U.S.C. § 1451(2) (same). We flag this point because it will become important, **by contrast**, that Congress's authorization **for the substantive application of state ethics rules** to members of state bars actually **does not define the District as a "State." See 28 U.S.C. § 530B.** This means that D.C. court actions concerning attempted discipline of Justice Department attorneys are removable to this Court but—as we will show in a forthcoming motion to dismiss to be filed at the appropriate juncture after any disputes over removal jurisdiction are first resolved—local D.C. courts possess no delegated federal authority to discipline Justice Department attorneys. And that lack of authority is especially apparent as to attempts to exercise District disciplinary power over lawyers who have not even appeared in front of such a local court in the ordinary course of litigation, as is true of Respondent here.

Jeffrey B. Clark, Respondent." The Clerk's Office has apparently rejected that suggestion including by giving this case a "-mc-" (miscellaneous) case number. Respondent is unsure of the implications of that administrative decision concerning case numbering, but reserves all of his rights, should at some point any claim be made that the numbering decision carries adverse substantive significance for Respondent.

14. The prior removal was timely with respect to the Second Subpoena because it was filed 11 days after the Second Subpoena was served. This Second Notice of Removal is timely with respect to the Motion to Enforce the Second Subpoena (Exhibit A-3) because it is filed on the thirtieth day from the filing of that motion on October 26, 2022. It is also timely on multiple other grounds, as described in the next several paragraphs. Recognize at the outset that the federal officer removal statute itself, 28 U.S.C. § 1442, does not specify a time limit for removal. As a result, the timing of when federal officer cases are removable depends on whether the prosecution or case against the federal officer is a civil case, a criminal case, or a hybrid of the two.

15. First, this action (being in-part criminal) is timely removed pursuant to 28 U.S.C. § 1455(b)(1) (emphasis added), which provides as follows:

> A notice of removal of a criminal prosecution shall be filed not later than 30 days after the arraignment in the State court, *or at any time before trial*, whichever is earlier, except that for good cause shown the United States district court may enter an order granting the defendant or defendants leave to file the notice at a later time.

16. There is no analogue to an "arraignment" in the District's disciplinary process, so the 30-day period referenced in Section 1455(b)(1) is wholly irrelevant here.[3] This removal is thus timely under Section 1455(b)(1) because no trial has yet occurred and thus this is indisputably a pretrial removal.

17. Additionally, even if this removal were somehow untimely under Section 1455(b)(1) (which it is not), Respondent hereby pleads that good cause can be shown to allow this removal at this time. This local law attempt to discipline internal Executive Branch legal advice, including that presented to the President of the United States, is historically unprecedented (as ODC has conceded). How Section 1455(b)(1) and Section 1442 fit together is also not a subject that has generated very much case law.[4] As other facts and procedural history pleaded herein demonstrate, Respondent,

---

[3] Neither Section 1455 nor Section 1451 (containing generally applicable definitions to Title 89 of Title 28 of the United States Code, where the removal statutes are housed) defines the term "arraignment." BLACK'S LAW DICTIONARY defines "arraignment" as "The initial step in a criminal prosecution whereby the defendant is brought before the court to hear the charges and to enter a plea." Mr. Clark was not brought before the Hearing Committee or before any other DCCA body to enter a plea or hear the charges, ergo no arraignment exists.

[4] Undersigned counsel found only three cases in Westlaw where Section 1455(b)(1) could be found within 30 words of Section 1441! (Boolean search). And none of them were a valid Section 1442 removal, since many non-federal officer defendants wrongly think (or attempt) to use Section 1442 as a basis to get out of state court. Counsel is thus unaware of any authority that explains how Section 1442 civil removals (triggering Section 1446's applicability) should interface with Section 1455(b)(1). This is likely because hybrid criminal-civil removals are rare.

through his counsel, removed this case only after the local bodies subordinate to the DCCA refused to even address whether they possessed subject matter jurisdiction over this case before insisting upon a factfinding trial (called a "hearing").[5] It is still very early in this case and there is thus "good cause" to deem this removal as timely within the meaning of Section 1455(b)(1).

18.    As to the removal of subpoenas from state court (or deemed equivalents), 28 U.S.C. § 1446(g) addresses the issue of timeliness and provides that Section 1455(b)(1) "is satisfied if the person or entity desiring to remove the proceeding files the notice of removal not later than 30 days after receiving, through service, notice of any such proceeding." And, as noted above, the prior Notice of Removal was filed within 30 days of email service of the October 6, 2022 Second Subpoena, thereby providing yet another basis for timeliness.

19.    In the alternative, even if this case were exclusively considered a civil case, removal would still be timely because this Notice of Removal has been filed within 30 days after the filing of the October 26, 2022 Motion to Enforce in the DCCA.

---

[5] On information and belief, it rare for ODC to bring disciplinary actions first, in lieu of waiting for the completion of other substantive proceedings, especially ones currently underway. Yet here, ODC, the Hearing Committee, and the Board have rushed to set a hearing to commence on January 9, 2023, refusing to wait for resolution of any of the following: (1) proceedings in and a report from the House January 6 Select Committee, (2) a potential federal criminal investigation involving DOJ's Office of Inspector General, or (3) proceedings before a Fulton County, Georgia Special Grand Jury.

20. Pursuant to 28 U.S.C. § 1446(a), Respondent's counsel hereby attaches as Exhibit A hereto a copy of all process, pleadings, and orders served on him in connection with the Second Subpoena, namely the Second Subpoena itself, the motion to enforce same, all subsequent filings from that point forward in the DCCA, and (for context), the Charges. All other case events related to the Charges were previously filed with the First Notice of Removal in Case No. 1:22-mc-00096-RC and need not be filed again here. If filing of the other case events related to the Charges is required, Respondent will do so. Exhibit A-1 contains a list of all exhibits filed with this Second Removal. And Exhibit A-2 is the DCCA's docket sheet containing the filings on October 26, 2022 and thereafter.

**Brief Summary of Factual Allegations**

21. The Second Subpoena purports to be issued in connection with Charges filed against Respondent by Disciplinary Counsel Fox. Mr. Fox is seeking to investigate and penalize Respondent's discretionary actions as the Assistant Attorney General over two DOJ Divisions in the rough time frame of December 2020 to January 3, 2021, and to uncover the research and facts on which Mr. Clark relied on while in office to make legal policy recommendations to the Acting Attorney General of the United States, to the PADAG, then performing the duties of the Deputy Attorney General, and, most importantly, to the President of the United States. Those recommendations are pleaded in the Charges to be housed in a document called the

"Proof of Concept Letter" that is claimed to have been circulated by Respondent to the Acting Attorney General and the PADAG. Its contents eventually became available to the White House Counsel and the President of the United States, and were later anonymously leaked to the *New York Times* in late January 2021 by persons unknown to the Respondent. A copy of the Charges is attached as Exhibit A-6.

22. The Second Subpoena seeks production of United States Department of Justice records, including emails, documents, witness statements, notes concerning internal Justice Department investigations, and other information relating to Respondent's performance of his official duties as a double Assistant Attorney General. This Second Subpoena, again dated October 6, 2022, is attached as Exhibit A-7. The intrusion of the Second Subpoena into the purely federal sphere is plain and obvious on its face.

23. Respondent's objections to the Second Subpoena include, without limitation, a panoply arising from and based on federal constitutional law and the powers and privileges of the presidency and Executive Branch, such as separation of powers, the Supremacy Clause, executive privilege, law enforcement privilege, etc.

24. Moreover, the Second Subpoena triggers the *Touhy* process, which requires detailed review by the Department of Justice to protect federal interests.

**Brief Procedural History Summary**

25. Disciplinary Counsel Fox began the investigation leading to the Charges and the

recent Second Subpoena attached as Exhibit "A-7" at the behest of United States Senator Richard Durbin, Chair of the Senate Judiciary Committee. Senator Durbin alleged that the District of Columbia Bar should investigate whether Respondent's alleged policy recommendations and efforts to argue their merits with his superiors and persuade the President of the United States violated various provisions of the D.C. Rules of Professional Conduct.

26. Mr. Fox commenced an investigation under D.C. Bar Rule XI, seeking on November 22, 2021 to discover via subpoena directed at Mr. Clark the contents of Respondent's DOJ deliberative files and correspondence. Mr. Fox did not seek such material from DOJ directly. Why Mr. Fox presumes that Mr. Clark has immediate access to his DOJ files, even though he is a former and not a current DOJ official is not clear.

27. Respondent objected to the subpoena by letter dated January 31, 2022 (a date reached by mutual agreement between Respondent and ODC), asserting his Fifth Amendment right not to be compelled to testify.[6] He also maintained that the subpoena "seeks privileged information, seeks information that exceeds

---

[6] We maintain that Respondent is innocent of the Charges and that it is axiomatic that the Fifth Amendment is not a right that can be claimed only by those who concede guilt. Mr. Clark has been a distinguished member of the D.C. Bar for 25 years and starting in 2001 has been entrusted with multiple offices of federal trust and honor. His reputation for probity in federal office or as an officer of the courts (whether during public or private law practice) was never seriously questioned until the intensely contentious political disputes surrounding the 2020 presidential election arose.

constitutional limitations or is otherwise improper" under D.C. Bar Board of Professional Responsibility Rule 2.9(a), and preserved his right to litigate "novel, complex and difficult Executive Privilege, Separation of Powers, Fifth and Sixth Amendment, and Professional Responsibility issues" necessarily involved when an Assistant Attorney General of the United States makes legal policy recommendations to the Acting Attorney General, the PADAG, and the President of the United States.

28. On February 3, 2022, Disciplinary Counsel Fox filed, under seal in the DCCA, a Motion to Compel the production of the records and information requested in the November 2021 subpoena.

29. Respondent replied, also under seal, with a Response to Motion to Compel and Cross-Motion to Quash, asserting, among other things, that the District of Columbia Bar did not have jurisdiction to investigate either the content of, or basis for, internal deliberations among officers of the United States and their communications with the President of the United States, and that all such information was covered by a variety of privileges and limitations arising under the Constitution and laws of the United States, including executive privilege, separation of powers, the First, Fifth, and Sixth Amendment, and 28 U.S.C. § 530B.

30. Briefing on the Motion to Compel in the DCCA was complete as of March 14, 2022. Months elapsed without any action by the DCCA.

31. While Disciplinary Counsel's Motion to Compel and Respondent's Response to Motion to Compel and Cross-Motion to Quash were pending before the DCCA, Mr. Fox (apparently impatient with the pace of adjudication on an appellate motion he himself had elected to file) filed the public Charges against Respondent, asserting violations of Rules 8.4 (a) and (c) of D.C. Rules of Professional Conduct because Respondent "attempted to engage in conduct involving dishonesty, by sending the Proof of Concept letter containing false statements," and a violation of "Rules 8.4(a) and (d), in that Respondent "attempted to engage in conduct that would seriously interfere with the administration of justice."

32. On September 15, 2022, the DCCA filed an order unsealing all of the investigatory stage filings in that court, holding that, "because disciplinary proceedings have been initiated the pending [investigative-stage] subpoena" was no longer operative. It dismissed the Motion to Compel as moot; denied Respondent's Motion to Quash the subpoena; ordered, pursuant to D.C. Bar Rule XI § 18(c) "that all motions to quash a subpoena must be heard and decided by a Hearing Committee designated by the Executive Attorney;" and held that the power to issue subpoenas under D.C. Bar Rule XI § 18(a) rests with either Disciplinary Counsel or a member of a Hearing Committee.

33. The reasoning of the DCCA in dismissing the first motion to enforce applies with equal force to the Second Subpoena and the Second Motion to Enforce—it is an

investigative subpoena on its face and therefore invalid.

34. Short of filing an extraordinary writ with the DCCA to establish that jurisdiction does not exist to allow ODC to file and pursue the Charges against Mr. Clark (including via subpoena), Respondent had no choice but to remove this case to this Court so that he could obtain threshold review of the jurisdictional issue, which is not only mandated by binding Supreme Court precedent but constitutes the only orderly way for litigation to proceed. To hold a factfinding hearing before jurisdiction is established is to put the cart before the horse. It also risks creating a media spectacle, exposing internal Executive Branch deliberations that should have remained confidential at all times under prevailing lawyer ethics rules common to all bars, and the resulting prejudice to Respondent of a public hearing on a matter of intense political debate. ODC should not be permitted to make the process the punishment.

35. Respondent puts the DCCA, ODC, the Board, and its Hearing Committees on notice, however, that if, for some reason this case is ultimately remanded, even after appellate review, Respondent reserves his right to challenge the malconstructed sequencing the DCCA has put in place for its discipline cases (wherein factual hearings inefficiently go before the resolution of jurisdictional disputes) via the filing of an extraordinary writ or the like in the DCCA shortly after remand.

## Removal Jurisdiction Exists Over This Case Pursuant to the Federal Officer Removal Statute, 28 U.S.C. § 1442.

36. The first basis for removing the Second Subpoena arises because the Second

Subpoena seeks discovery relating to information gathered and reviewed and actions undertaken by Respondent while he was a federal officer in the course of performing his duties as a federal officer. As a result, this matter falls squarely within the removal jurisdiction of 28 U.S.C. § 1442, regardless of the nature of the relevant cause of action brought against Respondent or how any such action is styled by its plaintiff or proponent. *See id*. § 1442(a)(1) (allowing removal of actions filed against a federal officer "in an official or individual capacity") (emphasis added).

37. Section 1442(a)(1) provides as follows:

> (a) A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
>
> > (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

38. This case can clearly be seen as either a "civil action or criminal prosecution." *See, e.g., In re Artis*, 883 A.2d at 101 (referring to "a disciplinary case, which is 'quasi-criminal' in nature"). Indeed, the main holding of *In re Artis* is that the anti-compelled testimony clause of the Fifth Amendment to the U.S. Constitution applies to disciplinary proceedings like this one.

39. Moreover, in reality, ODC's Charges trigger a criminal-civil hybrid. *See* BLACK'S LAW

DICTIONARY (defining "quasi" to carry a number of meanings: "[s]eemingly but not actually; in some sense or degree; resembling; nearly.") (emphasis added). Since it is obvious that *In re Artis*, by providing some protections afforded in the criminal context, is not saying that disciplinary proceedings are "not actually" criminal to any degree, the most applicable meanings of "quasi" in *Artis* are clearly "in some sense or degree; resembling; nearly."

40. In other words, District disciplinary proceedings are to some degree criminal, meaning that their remaining degree is civil and thus opening up to Respondent the use of both civil and criminal removal statutes.

41. For purposes of Section 1442, this case was "commenced in a State Court." The DCCA is clearly a court of the District of Columbia. And Section 1442(d)(5) defines the "District of Columbia" and certain other federal entities as "States." 28 U.S.C. § 1442(d)(5).

42. The Second Subpoena and therefore this case are "against or directed to" Respondent, 28 U.S.C. § 1442(a), and relate to his conduct as "an[] officer . . . of the United States or of any agency thereof." *Id*. at § 1442(a)(1). As noted above, Mr. Clark was a double Assistant Attorney General at the United States Department of Justice, beginning (as to one of his offices) on November 1, 2018 and ending January 14, 2021 (as to both of his offices).

43. Section 1442 federal officer removal exists when the underlying conduct occurs while

a defendant is in federal employ. *See*, e.g., *Williams v. Lockheed Martin Corp.*, 990 F.3d 852 (5th Cir. 2021) (exercising civil removal jurisdiction over a former employee plaintiff exposed to asbestos while working for the predecessor corporation to Lockheed Martin, where that employee helped to build federal government rockets for NASA); *Kentucky v. Long*, 837 F.2d 727 (6th Cir. 1988) (exercising removal jurisdiction as to a criminal action filed in 1986 against a former FBI agent, relating to actions undertaken when he was in federal employ from 1979 to 1981). All that matters is that the Second Subpoena seeks documents from Mr. Clark pertaining to Mr. Clark's work during his federal employment, a fact which is undisputed.

44. During this span of time focused on by the Second Subpoena, Mr. Clark's conduct has been brought into question "[a] for or relating to any act under color of such office or [b] on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue." 28 U.S.C. § 1442(a)(1). The subject matter of the documents requested by the Second Subpoena all relate to official-duty "acts" that occurred under color of Mr. Clark's federal office. They also relate to potential actions pursuant to DOJ "authority claimed under any Act of Congress for the apprehension or punishment of criminals." 28 U.S.C. § 1442(a)(1). For any ensuing election investigations could have led to federal criminal charges.

45. Respondent has asserted a series of federal-law based objections to the Second

Subpoena, including defenses based on the doctrines of separation of powers,

federalism, the lack of jurisdiction in the DCCA, immunity, the Opinion Clause, the

Take Care Clause, and numerous other legal provisions and doctrines. *See generally*

Exhibit A-4 (Response and Objections to Second Subpoena, and Documents

Incorporated by Reference).

46. "We must construe the statute liberally in favor of removal, *Watson v. Philip Morris*

*Cos.*, 551 U.S. 142, 147 (2007), and 'we credit the [officer's] theory of the case for

purposes of both elements of' the removal inquiry, [*Jefferson Cty, Ala. v.*] *Acker*, 527

U.S. [423,] 432 [(1999)]." *K&D LLC v. Trump Old Post Off. LLC*, 951 F.3d 503, 506 (D.C.

Cir. 2020) (the two elements being (1) raising a colorable federal defense that (2)

relates to any act under color of the removing federal official's office).

47. 28 U.S.C. § 1442(d)(1) (emphasis added) provides as follows:

> The terms "civil action" and "criminal prosecution" include any proceeding
> (*whether or not ancillary to another proceeding*) to the extent that in such
> proceeding a judicial order, *including a subpoena for testimony or*
> *documents, is sought or issued*. If removal is sought for a proceeding
> described in the previous sentence, and there is no other basis for removal,
> only that proceeding may be removed to the district court.

48. Ancillary removals are clearly permissible and this Second Removal (based on ODC

having sought to enforce the Second Subpoena) is ancillary to the First Removal. As

emphasized above, the fact that this is a Second Removal is a type of removal

contemplated by Congress because Congress made it irrelevant whether this Second

Removal stands alone or whether it is ancillary to the First Removal.

49. Additionally, the second sentence of Section 1442(d)(1) does not apply because there is "[an]other basis for removal." Namely, the next basis for removal covered below concerning 28 U.S.C. §§ 1331 (and the doctrine of complete preemption) & 1441. Indeed, under the combined effect of both sentences of Section 1442(d)(1), had Respondent not already removed the entire action in the First Removal, Respondent could now still remove (and does remove) the entire action at this time because of ODC's new filing on October 26, 2022. Respondent hereby includes this Second Removal based on ODC's motion to enforce filed on October 26, 2022 as providing additional grounds for the removal of the entire action to this Court.

**Original Jurisdiction Exists Pursuant to the Federal Question Statute (28 U.S.C. § 1331) Under the Doctrine of Complete Preemption and Thus Civil Removal Jurisdiction Also Exists Pursuant to 28 U.S.C. § 1441.**

50. Disciplinary jurisdiction by the DCCA and its adjuncts over Respondent's conduct is *not* self-executing (especially where Respondent did not appear, as relevant to the Charges, to litigate before any local court of the District). Instead, a federal statute is required *to even potentially* authorize such local disciplinary jurisdiction.

51. The federal statute in question, 28 U.S.C. § 530B(a) (emphasis added), provides as follows: "An attorney for the Government shall be subject to State laws and rules, and local Federal court rules, governing attorneys in each State where such attorney engages in that attorney's duties*, to the same extent and in the same manner as other attorneys in that State.*"

52. The problem for ODC is that **the District of Columbia is <u>not</u> a "State."** Hence, Section 530B(a) confers no authority on the DCCA and its adjuncts to try to discipline the conduct of Respondent. Federal statutes **sometimes deem the District to be treated as if it were a State,** but there is no such special directive in Section 530B, or indeed anywhere in Chapter 31 of Title 28 of the United States Code (which collects statutes involving the Attorney General and DOJ). By contrast, and also under the canon of *expressio unius est exclusio alterius* (the expression of one alternative implies the exclusion of all others), the text of the first and primary removal statute invoked to support this Second Notice of Removal (and the First Notice of Removal) itself explicitly confers "deemed State" status on the District. *See* 28 U.S.C. §§ 1442(d)(5)-(6) & 1451(2). *See, e.g., TVA v. Hill*, 437 U.S. 153 (1978) (a grouping of hardship exceptions to the applicability of the Endangered Species Act was exclusive). But when one turns away from removal issues to the **substantive issue** of disciplinary authority, there is no "deemed State" status conferred on the District. Instead, under Section 530B(a), the disciplinary delegation **occurs only to "States" full stop,** whereas the grouping to which federal officer removal jurisdiction applies is a **different grouping** of "States" and deemed States, *i.e.,* States together with (1) the "District of Columbia," (2) "United States territories and insular possessions, and [(3)] Indian country." 28 U.S.C. § 1442(d)(5).

53. Congress thus knows how to deem the District a "State" when it wants to do so. It

clearly wanted to do so for purposes of removal but, equally clearly, it did **not** want to do so as to the topic of attorney discipline. For Sections 1442(d)(5) and 530B(a) cannot be read to apply to **interchangeable** groupings of jurisdictions granted some limited sphere of disciplinary power over Justice Department attorneys. The language of the two statutes is too disparate to even attempt to do so.

54. For these reasons, the DCCA is entirely fenced out of the federal grant of authority to regulate Justice Department lawyers engaged in internal deliberations. Therefore, that area of regulation is, in short, completely preempted.

55. "In complete preemption a federal court finds that Congress desired to control the adjudication of the federal cause of action to such an extent that it did not just provide a defense to the application of state law; rather, it replaced state law with federal law and made it clear that the defendant has the ability to seek adjudication of the federal claim in a federal forum." Wright, Miller & Cooper, 14B FEDERAL PRACTICE & PROCEDURE § 3722.1 at 512 (3d ed. 1998). Here, the rationale for complete preemption is even stronger because regulating Justice Department lawyers is inherently a federal role—and not, in the absence of a clear delegation (as is certainly true here), a state role. Simply put, Section 530B(a) never textually delegates to the District any power to discipline Justice Department Attorneys, especially when they are not interfacing with the local courts of the District. State/local law here was not displaced; it was never made applicable to District disciplinary regulation in the first place.

56. ODC may well point to Section 530B(b), which grants rulemaking power concerning Section 530B to the Attorney General. A federal rule resulting from that delegation does exist and it does purport to *expand* Section 530B's reach to the District. *See* 28 C.F.R. § 77.2(i). But Respondent's position is that this rule is *ultra vires* in violation of Step One of *Chevron* because it attempts to vary the plain text of Section 530B(a), which agencies lack the power to do. *See Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 843 n.9 (1984). DOJ cannot by rulemaking give itself the power to make the statute apply District ethics laws to DOJ lawyers.

57. Additionally, Section 77.2 has an important caveat, which ***independently*** places this case beyond the jurisdiction of ODC, the DCCA, and the DCCA's other adjuncts: "Nor does the phrase include any jurisdiction that would ***not ordinarily apply*** its rules of ethical conduct to particular conduct or activity by the attorney." 28 C.F.R. § 77.2(j)(2). This provision carries out Section 530B(a)'s caveat that ethics regulation, even where it is delegated to the States (not the District) apply only ***"to the same extent and in the same manner as other attorneys in that State."***

58. And Mr. Fox recently conceded, in an email exchange undersigned counsel initiated to try to ascertain the proposed sanction he is seeking against Respondent, that this case is not one in the ordinary course, being conducted "to the same extent and in the same manner" as other disciplinary matters ODC handles. This is because Mr. Fox recognizes that ***there has never been a case like this before*** (a key point Respondent's

counsel has argued repeatedly to ODC, the Hearing Committee, the Board, and the DCCA). *See* First Removal (Case No. 1:22-mc-00096-RC), Exhibit D, Email from Phil Fox to Charles Burnham, *et al.* (Oct. 6, 2022) (emphasis added) ("I don't think there is ***any comparable conduct,*** which means this is something that I will need to dwell on."). If there is no comparable conduct, then the attempt to discipline such conduct is not a matter "ordinarily" brought up for District lawyer discipline and so it falls outside even an *ultra vires* regulation that tries to make the square peg of Section 530B's authorization to "State" disciplinary proceedings apply to the round hole of "District" disciplinary proceedings. Similarly, and even more importantly, the lack of comparable cases means that this disciplinary matter cannot be one where ODC is proceeding "***to the same extent and in the same manner as*** [it pursues discipline concerning] ***other attorneys in that State***" (even assuming, incorrectly but *arguendo*, that the District can function as a "State" under the statute). 28 U.S.C. § 530B(a) (emphasis added).[7]

---

[7] The fact that ODC admits that its case against Mr. Clark is unprecedented distinguishes it from cases where, for example, Assistant United States Attorneys ("AUSAs") have faced discipline. *See, e.g. In re Andrew J. Kline*, 11 A.3d 202 (D.C. 2015) (discipline case involving discovery violations by an AUSA). Without conceding that ODC can reach such AUSA conduct under Section 530B (a question not presented here), we recognize that ODC does "ordinarily apply" its rules to attorneys who appear before D.C. courts. However, as the ODC has admitted, it does not "ordinarily apply" its rules of ethics to non-court, purely internal advice provided by high-ranking DOJ lawyers to their superiors up to and including the President of the United States. Thus, whether on the

59. 28 U.S.C. § 1441(a) provides as follows:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

60. As explained above, District disciplinary proceedings are criminal-civil hybrids. As such, Section 1441(a) applies here, for this proceeding is, at least in part, a "civil action."

61. Section 1451(2) deems the District to be a "State" "for purposes of this chapter" (*i.e.*, Chapter 89 of Title 28 of the United States Code). And Section 1441(a) is part of Chapter 89. As such, this in-part "civil action" is pending in "a State Court," within the meaning of Section 1441(a) as supplemented by Section 1451(2).

62. The District Court has original federal question jurisdiction over this in-part "civil action" because the attempted District lawyer discipline at issue here is completely preempted as it falls outside the authorization of Section 530B(a) (and Section 77.2(j)(2)).

63. The term "defendant" is not defined in Section 1441(a) but Respondent is clearly placed by District law in a defensive posture as to the Charges being advanced by ODC, even though District procedural law refers to him by a different term.

---

basis of a pure- text reading of Section 530B(a) or, even assuming the validity of Section 77.2(i), the Charges brought here are beyond ODC's powers.

**The DCCA, Board, and Any Hearing Committee May Not Proceed Further on This Matter Now That Removal Has Occurred.**

64. As noted above, this matter is a criminal-civil hybrid. As such, it must be governed by harmonizing the procedural removal statute for criminal actions (Section 1455) with the procedural removal statute for civil actions (Section 1446).

65. Section 1455(b)(3) provides that "The filing of a notice of removal of a criminal prosecution shall not prevent the State court in which such prosecution is pending from proceeding further, except that a judgment of conviction shall not be entered unless the prosecution is first remanded." 28 U.S.C. § 1455(b)(3). *See also* 28 U.S.C. § 1455(b)(5) (in situations where "the United States district court does not order the summary remand of such prosecution," and once the "district court determines that removal shall be permitted, it shall so notify the State court in which prosecution is pending, ***which shall proceed no further***.") (emphasis added).

66. Additionally, Section 1446(d) provides that once notice of removal is filed as to a civil action with the clerk of the "State court" and notice is given to adverse parties "the State court shall proceed no further unless and until the case is remanded." 28 U.S.C. § 1446(d).

67. The only way to harmonize those two statutes, both of which apply to this removal, is for the State Court—here the ***Deemed***-State Court (*i.e.*, the DCCA and its adjuncts) to be precluded from proceeding further with the matter "unless and until the case is remanded." *See, e.g., United States v. Fausto*, 484 U.S. 439, 453 (1988) ("we must

engage in the classic judicial task of reconciling many laws enacted over time, and

getting them to make sense in combination") (cleaned up).

68. ODC has already violated the automatic stay of Section 1446(d) by filing its motion

to enforce the Second Subpoena (Exhibit A-3). Respondent will further notify the

Court if the DCCA or any of its adjuncts attempt to proceed contrary to Section

1446(d). Any such action would run flatly contrary to the intent of the federal-officer

removal statute, which is to shift the locus for adjudicating cases that might impinge

upon federal officers' powers to an Article III court forum.

69. Indeed, ODC appears to recognize that it is proceeding contrary to 28 U.S.C. §

1446(d), for it has asked the DCCA to hold its Second Subpoena in abeyance. *See*

Exhibit A-5 at 2.

**Post-Removal Procedural Matters in This Court**

70. Proceedings on enforcement of the October 6, 2022 Second Subpoena should be

recognized as suspended until the Court has first resolved threshold motions

practice, especially on the topic of removal jurisdiction and then on the topic of ODC's

subject matter jurisdiction.

**Venue and Removal Under 28 U.S.C. § 1441(a)**

71. Venue is proper in this Court pursuant to 28 U.S.C. § 1446(a), as the United States

District Court for the District of Columbia is the District in which the State Court

Action was pending.

72. This matter is removable under 28 U.S.C. § 1441 as in-part a civil action over which the United States District Court for the District of Columbia has original subject matter jurisdiction under 28 U.S.C. § 1331 and the doctrine of complete preemption.

73. This matter is thus also removable under 28 U.S.C. § 1442 and § 1455 because the Charges are in-part a criminal prosecution that is pending within another jurisdiction (the DCCA), which also falls within the span of the United States District Court for the District of Columbia.

**Effectuation of Removal**

74. Respondent hereby removes this quasi-prosecution case subpoena enforcement action to the United States District Court for the District of Columbia.

75. By filing this Notice of Removal, Respondent expressly consents to the removal.

76. Pursuant to 28 U.S.C. § 1446(a), copies of all pleadings, as well as copies of all process and other papers, from the October 26, 2022 motion to enforce forward, filed in the DCCA, are attached hereto as Exhibit A. All prior pleadings, process and other papers were attached to the Notice of Removal in Case No. 1:22-mc-00096-RC in this Court. The Charges are also included, for context, in the exhibits herein to this Second Removal, meaning those Charges appear both as an exhibit to the First Removal and as Part of Exhibit A herein.

77. The allegations herein were true at the time the Deemed-State Court Action was commenced and remain true as of the date of filing of this Notice of Removal.

78.  Undersigned counsel certifies that a notice of filing this removal, along with a copy of

this Second Notice of Removal, will be promptly filed with the DCCA, as well as

with the Board, which will give notice to its Hearing Committee. Respondent will

also serve this filing on opposing counsel.

79.  WHEREFORE, Respondent hereby removes this action to the United States District

Court for the District of Columbia.

This 25th day of November, 2022.

Respectfully submitted,

*/s/ Charles Burnham*
Charles Burnham
D.C. Bar 1003464
*Attorney for Respondent*

BURNHAM & GOROKHOV, PLLC
1424 K Street NW, Suite 500
Washington, DC 20005
(202) 386-6920 (phone)
(202) 265-2173 (fax)
charles@burnhamgorokhov.com

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing Second Notice of Removal (and its accompanying exhibits) was hereby filed on November 25, 2022, and that copies of the Second Notice of Removal were served on the District of Columbia Board of Professional Responsibility, which will give notice to the Chair of Hearing Committee Twelve, and on Disciplinary Counsel Hamilton P. Fox on October 25, 2022 as well. I sign consistent with Federal Rule of Civil Procedure 11.

This 25th day of November, 2022.

*/s/ Charles Burnham*
Charles Burnham
D.C. Bar 1003464
*Attorney for Respondent*

BURNHAM & GOROKHOV, PLLC
1424 K Street NW, Suite 500
Washington, DC 20005
(202) 386-6920 (phone)
(202) 265-2173 (fax)
charles@burnhamgorokhov.com