# EXHIBIT A-3



**DCCA No. 22-BG-0059**

**DISTRICT OF COLUMBIA
COURT OF APPEALS**

Clerk of the Court
Received 10/26/2022 08:59 AM
Filed 10/26/2022 08:59 AM

|  |  |  |
|---|---|---|
| In the Matter of | : | |
| | : | |
| JEFFREY B. CLARK, ESQ. | : | **Disciplinary Docket No. 2021-D193** |
| | : | **Board Docket No. 22-BD-039** |
| Respondent, | : | |
| | : | |
| A Member of the Bar of the District | : | |
| of Columbia Court of Appeals. | : | |
| Bar Number: 455315 | : | |
| Date of Admission:  July 7, 1997 | : | |
| | : | |

## DISCIPLINARY COUNSEL'S MOTION TO
## ENFORCE SUBPOENA *DUCES TECUM*

Disciplinary Counsel moves the Court, pursuant to D.C. Bar Rule XI, § 18(d), for an order enforcing a subpoena *dues tecum* and compelling Respondent, Jeffrey B. Clark, Esquire to produce certain documents set forth in the attachment to the subpoena.

As grounds for the motion, Disciplinary Counsel states the following:

1.    On October 7, 2021, Senator Richard Durbin, the Chair of the U.S. Senate Committee on the Judiciary, forwarded a Majority Staff Interim Report of that Committee to the Office of Disciplinary Counsel, calling its attention to the conduct of Respondent Jeffrey B. Clark, a member of the D.C. Bar.  Ex. 1.

1

2.    The Report alleged that on December 28, 2020, Respondent, who was serving as the Acting Assistant Attorney General for the Civil Division of the United States Department of Justice, forwarded a draft letter to Acting Attorney General Jeffrey Rosen and his deputy, Richard Donohue, and sought their authorization to send it to the governor of Georgia and certain other Georgia state officials.  The letter asserted that the Department of Justice had taken notice of certain irregularities in the November general election that called for a special session of the Georgia legislature to be convened.  Mr. Donoghue was monitoring Department of Justice investigations into allegations of election irregularities and had been briefing Mr. Rosen on those matters.  Mr. Rosen and Mr. Donoghue refused to authorize sending Respondent's letter, in part because they were unaware of any suspicion of misconduct that would affect the outcome of the presidential election, as represented in the letter.  Respondent initially accepted this decision, but several days later, he revived the idea of sending his proposed letter.  Respondent informed Mr. Rosen that the President was prepared to appoint him to replace Mr. Rosen as Acting Attorney General, but that he, Respondent, would not accept the position if Mr. Rosen would send the letter.  In a subsequent meeting with the President, at which Mr. Rosen and Mr. Donoghue were present, Respondent promised that he would send the letter if he were appointed Acting Attorney General.  *Id.*

3.     After reviewing the Report, Disciplinary Counsel docketed an investigation to determine whether Respondent was attempting to engage in conduct involving dishonesty, fraud, deceit, or misrepresentation, or conduct that seriously interferes with the administration of justice, in violation of Rules 8.4(a), (c), and (d), by advocating the sending of the letter to the Georgia officials even though there was no evidence of election irregularities that would have affected the outcome of the election.

4.     On October 18, 2021, Disciplinary Counsel informed Respondent, through his then-counsel, that he had docketed an investigation, forwarded the Report and other materials to him, and requested a written response.  Disciplinary Counsel also forwarded a subpoena *duces tecum* to Respondent's counsel. Responses were due on November 8, 2021.  Ex. 2 (without attached report). For a variety of reasons, the due date was postponed several times until Respondent eventually agreed to respond by 5:00 pm on January 31, 2022.  Ex. 3.

5.     Toward the close of business on January 28, 2022, the last business day before the responses were due, Respondent's current counsel informed Disciplinary Counsel by telephone that Respondent would assert his Fifth Amendment privilege against self-incrimination to the production of the subpoenaed documents.  This was the first time either Respondent or his counsel had given any indication that he did not intend to comply with the subpoena.

3

6.     On January 31, 2022, Respondent's counsel emailed two letters to Disciplinary Counsel in which he, *inter alia*, asserted the privilege against self-incrimination, pursuant to the act of production doctrine, and refused to produce any of the subpoenaed documents.  He also suggested that some of the materials might be subject to executive privilege.  Ex. 4 (this is a corrected version received by Disciplinary Counsel from Respondent's counsel on February 1).

7.     On February 3, 2022, Disciplinary Counsel moved to enforce its subpoena before the D.C. Court of Appeals.  *See In re Jeffrey B. Clark*, DCCA No. 22-BG-0059.  Ex. 5.  The parties thereafter filed various pleadings with the Court on that issue.  While that issue was pending, Disciplinary Counsel determined that it had sufficient evidence to proceed with charges without waiting for the subpoenaed documents.

8.     On July 19, 2022, Disciplinary Counsel filed a Petition and Specification of Charges against Respondent.  Ex. 6.

9.     After the charges were filed, Respondent obtained an extension until September 1, 2022, to file his Answer.  When he did, he asserted more than 50 affirmative defenses, some of which defy description.  ("D.C. Bar Jurisdiction Would Violate the Major Questions Doctrine;" "If ODC Has Been Colluding with Congress, the Charges Constitute a Bill of Attainder Designed to Target

Respondent;" "The Charges Violate the D.C. Human Rights Act Because They Discriminate Against Respondent's Political Affiliation and Beliefs.")  Ex. 7.

10.    Within a few days of the Answer, he also filed a Request to Defer and a Motion to Dismiss.  Exs. 8 and 9.  In both his Request to Defer and Motion to Dismiss, Respondent argued that this Court lacks subject matter jurisdiction to discipline him.  Pursuant to Board Rule 4.2, the Hearing Committee recommended to the Board that it deny the Request to Defer, rejecting Respondent's jurisdiction argument. Ex. 10.  The Board adopted the Committee's recommendation.  Ex. 11.

11.    On September 15, 2022, this Court determined that the motion to enforce the investigative subpoena was moot, but noted Disciplinary Counsel's authority to file a subpoena for documents to be used at the hearing on the merits. Ex. 12.

12.    The Request to Defer having been denied by the Board, the case came on for a scheduling conference on October 6, 2022.  The evidentiary hearing was set for January 9-14, 2023.  Respondent's counsel indicated their intent to seek judicial review of this Court's disciplinary jurisdiction, and invited the Hearing Committee to join in seeking such review.  The Chair declined.  Also, Disciplinary Counsel indicated that it would issue a new subpoena to Respondent.  Respondent's counsel agreed to accept service on his behalf.

13.     On October 6, 2022, following the scheduling conference, Disciplinary Counsel issued a subpoena *duces tecum* to Respondent via email to his counsel.  The subpoena set a return date of October 21, 2022.  Ex. 13.  That subpoena that is the subject of this motion.

14.     On October 17, 2022, Respondent removed this matter to the United States District Court for the District of Columbia, again making meritless subject matter jurisdiction arguments that the Hearing Committee and Board had previously rejected.  Disciplinary Counsel has moved to remand the case back to the Board on Professional Responsibility.  Although Respondent has moved the District Court to stay these proceedings and to quash the subpoena, Disciplinary Counsel has opposed these motions, and the District Court has not acted.  *In re Jeffrey B. Clark*, No. 1:22-mc-00096 (D.D.C.)

15.     On October 20, 2022, the day before subpoena responses were due, Respondent sent Disciplinary Counsel a letter arguing that its October 6, 2022, subpoena is an "investigative stage subpoena" rather than a "charge-stage subpoena," and was invalidly issued.  Respondent also incorporated by reference the objections to the subpoena issued during the investigation made in his letters of January 31, 2022.  Ex. 14.

## **ARGUMENT**

### I.     **This Court Has Subject Matter Jurisdiction to Enforce Its Disciplinary Rules Against Respondent**

The D.C. Court of Appeals is an Article I court created by Congress in 1970. District of Columbia Court Reorganization Act of 1970, Pub. L. No. 91-358, 84 Stat. 473 (1970).  As authorized by Congress, the Court sets its own rules for admission to its Bar and for the conduct of its members. *Id.* at 521. The Court has done so.  *See* D.C. App. R. 46 (admissions); D.C. Rules of Professional Conduct; D.C. Bar Rule XI (discipline).  Those who become members of its Bar are granted the privilege to practice through a "consensual covenant" with the Court "to be bound by Bar Rules and Rules of Professional Conduct … and to be subject to [its] disciplinary authority." *In re O'Neill*, 276 A.3d 492, 499 (D.C. 2022).  It is an uncontested fact that Respondent is a member of the D.C. Bar.  He is therefore subject to this Court's disciplinary jurisdiction under the plain language of Rule XI, § 1(a).

Furthermore, by statute, 28 U.S.C. § 530B(a), Congress has determined that lawyers for the federal government are subject to the disciplinary rules of the states and local federal courts in which they practice.  Pursuant to this delegated rule-making authority (28 U.S.C. § 530B(b)), the Attorney General has determined that this includes the disciplinary rules of the District of Columbia.  Section 530B, which was enacted long after 28 U.S.C. § 1442 (the statute under which Respondent has purported to remove this matter to federal court), is thus a determination that the states and the District of Columbia should be responsible for the discipline of government lawyers.  Removal would make a nullity of Section 530B.  Every time

a state or the District of Columbia sought to exercise its authority to discipline a federal lawyer, the lawyer could remove the case to federal court.  It was improper for Respondent to remove this matter.

## II.    The Subpoena was Validly Issued

In denying as moot the motion to enforce the original subpoena issued at the beginning of Disciplinary Counsel's investigation, the Court noted that "D.C. Bar R. XI, § 18(a) provides that once formal disciplinary proceedings are initiated the subpoena to compel attendance and production of documents may be issued by either Disciplinary Counsel or a member of the Hearing Committee."   Disciplinary Counsel properly issued the October 6, 2022, subpoena pursuant to its authority to do so following the filing of charges.  That the subpoena form Disciplinary Counsel used is the same as it uses during investigations is of not import.  Regardless of the form, the subpoena functions as a lawfully issued command to Respondent to produce documents, to which he must comply.

## III.    The Fifth Amendment Does Not Apply to the Subpoena Issued in This Matter

The Fifth Amendment privilege against self-incrimination applies to compelled incriminating testimony, but does not protect the contents of pre-existing, voluntarily prepared documents.  *Fisher v. United States*, 425 U.S. 391, 408-9 (1976).  A limited exception to that general proposition is the act of production doctrine, which recognizes that the compelled production of evidence may have

8

communicative aspects of its own separate from the contents of papers produced. *Id*. at 410.  A party invoking the act of production doctrine has the burden of proof. *See In re Subpoena Duces Tecum Issued to Commodity Futures Trading Comm'n*, 439 F.3d 740, 750 (D.C. Cir. 2006) (stating that "[i]t is well established that the proponent of a privilege bears the burden of demonstrating facts sufficient to establish the privilege's applicability").  Furthermore, the "basis of a privilege must be adequately established in the record through evidence sufficient to establish the privilege with reasonable certainty." *Id.* at 750-51 (cleaned up).

The act of production exception is generally invoked in response to a subpoena for personal records when producing the documents would admit that they existed, were in the possession or control of the witness, were authentic in the sense that they were the witness's actual records, and were responsive to the subpoena. *United States v. Hubbell,* 167 F3d 552, 567-68 (D.C. Cir. 1999), *aff'd* 530 U.S. 27 (2000).  If the documents would incriminate the witness, the act of production serves as a link in the chain between the incriminating evidence and the witness: these incriminating documents are my documents, and they are what they purport to be. *See generally*, *In re Public Defender Service*, 831 A.2d 890, 912-13 (D.C. 2003).

In order for the Fifth Amendment privilege to apply to the act of production, there must be compulsion, such as a subpoena; the production must constitute testimony, *i.e.,* these documents exist, are authentic, and are in the possession of the

witness; and the testimonial linkage to the documents must have an incriminating effect. *Hubbell* at 567. An incriminating effect requires the party claiming the privilege to show that by producing the documents there are "substantial and 'real,' not merely trifling or imaginary hazards of incrimination." *Hubbell* at 581; *see also United States v. Schmidt*, 816 F.2d 1477, 1482 (10th Cir. 1987) (holding that a "generalized fear of criminal prosecution" was an "insufficient basis for asserting a blanket claim of Fifth Amendment privilege in refusing to produce any of the documents requested"). Whether compelled production is testimonial, and incriminating depends on the facts and circumstances of the particular case. *Public Defender Service* at 913.

While there is no question that production would be compulsory in this case, there is no incrimination; the type of documents at issue in no way incriminate Respondent nor does their production have an incriminating effect. It is hardly necessary to point out that Disciplinary Counsel has no authority to investigate or bring a criminal case and hence production to Disciplinary Counsel cannot directly incriminate Respondent. Nor in his letters asserting the privilege (Ex. 4) did Respondent's counsel assert that Respondent is even the subject, much less the target, of any criminal investigation. Nor do the letters specify what criminal charges Respondent might realistically be subject to. The closest he comes to specifying a possible criminal charge is a dialogue between a reporter and lawyer, who is not a

prosecutor, and who invoked as a possible violation, 18 U.S.C. § 610. *See* Ex. 4 at 7. That statute prohibits a person from attempting to intimidate, command, or coerce a federal employee to engage or not engage in political activity such as voting or making a political contribution or working on a campaign—activities that no one has alleged are involved here. At one other point, he cites to an editorial in which three law professors argue that members of former President Trump's inner circle, not mentioning Respondent by name, might be investigated for obstructing an official proceeding (Ex. 4 at 8), which is presumably a reference to the January 6 riot and is entirely divorced from the allegations under investigation. Moreover, the citations to these statutes is preceded by the statement that, "we stoutly deny that Mr. Clark has committed any criminal acts …." Ex. 4 at 6.

In his Request for Deferral, Respondent cites to the fact that the Department of Justice executed a search warrant for his electronic devices, and that the warrant mentions 18 U.S.C. §§ 1001, 371, and 1515. Ex. 8 at 22 (PDF page number). However, he does not say that the false statements under investigation as violations of § 1001 were his false statements or that it was his conduct that is being investigated as obstruction of justice under § 1512. The dishonest conduct alleged in the Specification of Charges on which the Rule 8.4(c) charge is based was not a false statement made in a matter within the jurisdiction of the federal executive, legislative, or judicial branches of the United States, an element of § 1001. Rather,

the dishonesty was Respondent's unsuccessful attempt to get the Department of Justice to send a letter to various Georgia officials containing false information. Disciplinary Counsel has not charged Respondent with violating § 1001. Nor does conduct seriously interfering with the administration of justice, in violation of Rule 8.4(d), equate to obstruction of justice. The former generally refers to causing unnecessary proceedings before a tribunal — here, the Georgia legislature and the litigation that would have ensued had Respondent been successful.  Obstruction, on the other hand, generally refers to conduct that interferes with or impedes an investigation or official proceeding.

Respondent's generalized fear of potential prosecution cannot support his invocation of the Fifth Amendment.  The letters invoking the privilege in no way attempt to show how, by providing the subpoenaed documents, Respondent would be providing testimony that would constitute evidence against him for the violation of 18 U.S.C. §§ 610, 1512, or any other criminal statute.  Exhibit 13 at 4-5 sets forth six categories of documents called for by the subpoena:

- Documents of which Respondent was aware of before January 4, 2021 that contain evidence of irregularities in the 2020 presidential election that may have affected the outcome in Georgia or any other state;

• Documents that came to his attention following the December 1, 2020 announcement by the Attorney General that the Department had found no evidence of fraud that might affect the outcome of the election;

• Any file that Respondent maintained relating to his efforts between November 3, 2020 and January 4, 2021 to persuade Department of Justice officials to intervene in the certification of election results by any state, including Georgia;

• Any legal research he conducted before January 4, 2021 relating to the authority of the Department to intervene in a state's election certification process;

• All written Department policies and guidelines of which he was aware that were in effect between November 3, 2020, and January 4, 2021 relating to contacts between Department employees and the White House; and

• Documents supporting the contention that he was Acting Attorney General on January 3, 2021.

None of these materials will incriminate Respondent if they are produced, which is undoubtedly the reason he made no effort to specify how they would do so. To the extent these documents might relate to a hypothetical criminal prosecution, they would be exculpatory with respect to Respondent. They would tend to show he had factual and legal support for the efforts he took to have the Department of

Justice intervene in the counting of votes in Georgia.  These documents and their production could not possibly prove Respondent coerced a federal employee with respect to election activities or obstructed an official proceeding.  This is far removed from the situation in *Hubble*, where a criminal defendant was required to produce to the grand jury personal financial records which established his income tax evasion, or in *Public Defender Service*, where a grand jury subpoena, if complied with, might have linked the defendant to a coerced witness statement—and in both of those cases, rather than uphold a plausible assertion of the privilege, the courts remanded the cases for further evidentiary proceedings to develop the facts.  Respondent has not even made the theoretical linkage between the act of producing the documents at issue and any crime, much less the linkage that proved inadequate in both *Hubble* and *Public Defender Service.*

The letters from counsel invoking the Fifth Amendment also suggested that some of the subpoenaed information was protected by executive privilege.  The subpoena does not ask for communications between Respondent and former President Trump.  Surely not all of them are so privileged, so at a minimum Respondent must provide some specification of the materials he claims are.  Moreover, this is not Respondent's privilege to assert, and no one in possession of the privilege has asserted executive privilege in this disciplinary matter.

# **CONCLUSION**

Wherefore, for the foregoing reasons, Disciplinary Counsel requests that the court order Respondent to comply with the subpoena no later than one week from the issuance of its order.

Respectfully submitted,

*Hamilton P. Fox, III*

_____
Hamilton P. Fox, III
Disciplinary Counsel
Bar Registration No. 113050

/s/ Jason R. Horrell
Jason R. Horrell
Assistant Disciplinary Counsel
Bar Registration No. 1033885

OFFICE OF DISCIPLINARY COUNSEL
515 5th Street, N.W.
Building A, Room 117
Washington, D.C.  20001
202-638-1501

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of October, 2022, I caused a copy of the foregoing *Disciplinary Counsel's Motion to Enforce Subpoena Duces Tecum* to be filed with the District of Columbia Court of Appeals via the court's e-filing system, and that copies were served on the Board of Professional Responsibility c/o Case Managers to casemanagers@dcbpr.org, and to Respondent's counsel via email to Harry W. MacDougald, Esquire, to hmacdougald@CCEDlaw.com, to Charles Burnham, Esquire, to charles@burnhamgorokhov.com, and Robert A. Destro, Esquire, to Robert.destro@protonmail.com.

*Hamilton P. Fox, III*

_____
Hamilton P. Fox, III

DCCA No. 22-BG-0059

## DISTRICT OF COLUMBIA
## COURT OF APPEALS

_____
                                    :
In the Matter of                    :
                                    :
JEFFREY B. CLARK, ESQ.              :        Disciplinary Docket No. 2021-D193
                                    :        Board Docket No. 22-BD-039
        Respondent,                 :
                                    :
A Member of the Bar of the District :
   of Columbia Court of Appeals.    :
Bar Number: 455315                  :
Date of Admission:  July 7, 1997    :
_____:

## PROPOSED ORDER

On consideration of Disciplinary Counsel's motion to enforce subpoena *duces tecum*, it is, pursuant to Rule XI, § 18(d) of the Rules Governing the Bar of the District of Columbia,

**ORDERED** that Disciplinary Counsel's motion is granted. It is

**FURTHER ORDERED** that Respondent shall produce all documents and files described in Disciplinary Counsel's subpoena dated October 6, 2022, and he shall comply with the terms and conditions of the subpoena within 10 days of the date of this order.

BY THE COURT:

1

**<u>Copies to</u>:**

Respondent's Counsel
Harry W. MacDougald, Esquire, to <u>hmacdougald@CCEDlaw.com</u>,
Charles Burnham, Esquire, to <u>charles@burnhamgorokhov.com</u>,
Robert A. Destro, Esquire, to <u>Robert.destro@protonmail.com</u>

Hamilton P. Fox, III, Esquire
  Disciplinary Counsel

Jason R. Horrell, Esquire
  Assistant Disciplinary Counsel