IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: JEFFREY B. CLARK,<br><br>A member of the Bar of the District of Columbia Court of Appeals (Bar No. 455315) | Case No. 1:22-mc-00117-RC<br>(Related Case No. 1:22-mc-00096-RC) |
| IN RE: JEFFREY B. CLARK,<br><br>A member of the Bar of the District of Columbia Court of Appeals (Bar No. 455315) | Case No. 1:22-mc-00096-RC<br>(Related Case No. 1:22-mc-00117-RC) |

## REPLY IN SUPPORT OF CONSOLIDATION

Jeffrey B. Clark, Respondent in the above-entitled matter, hereby files this Reply in support of consolidating Case Number 1:22-mc-00117-RC with Case Number 1:22-mc-00096-RC. Consolidation is an issue not severable from the merits (or lack thereof) of the Office of Disciplinary Counsel's ("ODC's") Second Motion to Remand, despite ODC's best efforts to proceed to the contrary.

## INTRODUCTION

***These two cases must be consolidated because they were never properly separated.***

Nowhere in Disciplinary Counsel's Reply to Respondent's Opposition to Second Motion to Remand and Cross Motion to Consolidate (Dkt. ## 6 & 8 (Clerk relabeling), does Disciplinary Counsel Fox explain why he filed a motion to enforce a subpoena in the District of Columbia Court of Appeals ("DCCA") in the first place **after** Respondent had

removed this case to federal court. Instead, Disciplinary Counsel proceeds as if the additional step he inflicted on Respondent of filing a Second Notice of Removal gives him the opportunity to make additional arguments in support of removal.

Worse yet, Disciplinary Counsel tries to get the last word by ignoring that consolidation should not have been necessary because Respondent removed this *entire case* back on October 16, 2022, and the litigants should simply be awaiting the Court's ruling on disputed removal jurisdiction issues. *See* Dkt. # 6 at 1 ("Disciplinary Counsel has no objection to consolidat[ion]"). In reality, the issue of consolidation is inseparable from the merits concerning why the post-remand motion to enforce in the DCCA was improper, triggering the filing of a new case (Number 1:22-mc-00117-RC)—a step that should not have been necessary. Exposing the gamesmanship Disciplinary Counsel is engaging in necessitates filing this Reply in Support of Consolidation to set the record straight, where Disciplinary Counsel is trying to sweep under the rug the fact that he improperly triggered the need for Respondent to file a second removal.

1.     We invited Mr. Fox by letter to explain why he still has been proceeding before Hearing Committee Twelve and the Board of Professional Responsibility ("Board") as if this case has not been removed. *See* Exh. 1. Mr. Fox responded by email this evening (when this Reply by Respondent is due in this Court today) at 7:33 PM. *See* Exh. 2. In our letter, we also asked him to explain whether he had sought authorization from the Hearing Committee or the Board to proceed as if removal had not occurred. *See*

*id.* at 4 ("[W]e are surprised in the position that you took today in your telephone call with Mr. Burnham. This causes us to ask, is the Hearing Committee Chair aware that you are proceeding as if you can conduct a hearing on January 9, 2023, even if the U.S. District Court has not ruled on the removal disputes before that time? Is the Board aware of your position? Please let us know what the answers are to these questions as soon as possible and when you notified the Hearing Committee Chair and the Board of your intentions to proceed on January 9, 2023.").

Mr. Fox did not truly respond to that request in his email to us tonight. Indeed, he specifically stated that "We have had no contact with the Hearing Committee chair about this case outside of the hearings in which you were in attendance. We, of course, served our witness list on the Board office, which presumably supplied a copy to the chair, so he should be aware that we are proceeding with the schedule that he set." Exh. 2. We asked whether Mr. Fox had Board authorization. Mr. Fox responded only that he made the Board aware of his position.

**2.**     But this ignores that the Board has clearly labeled Mr. Fox's exhibit and witness lists as "*lodged*." Thus, we can only conclude that Mr. Fox is attempting to ignore the removal and that he lacks ***any express authority*** from the Hearing Committee or the Board to proceed as if removal did not occur. Indeed, there have now been two occasions in which Mr. Fox took steps in the DCCA or its adjuncts pretending removal did not occur where the Board acted to label Mr. Fox's steps as follows: (1) *See* Exh. 3

3

("Disciplinary Counsel's Objections to Respondent's Proposed Exhibits and Witnesses (Dec. 19, 2022) (emphasis added)) ("Your objections have been received and are **lodged** in Board Docket No. 22-BD-039, *which has been removed to the United States District Court for the District of Columbia*."; Exh. 4 ("Disciplinary Counsel's Exh. List, Exhs., and Witness List" (Dec. 12, 2022) ("Your exhibit list, exhibits and witness list have been received and are lodged in Board Docket No. 22-BD-039, which has been removed to the U.S. District Court for the District of Columbia.").

This labeling indicates that the Board regards the case as having been removed and is awaiting action from this Court. By contrast, Mr. Fox is proceeding in derogation **both** of this Court's authority to decide on the removal's propriety **and** in derogation of the Board process that he is subject to. Witness and exhibit lists are prerequisites to the January 9, 2023 hearing going forward before the Hearing Committee but those documents have **not been received for filing** and thus are nullities until, at best, lodging could converted into filing in the wake of a remand ordered by this Court, both events that have not occurred.

3.    ODC also continues to evolve its arguments. It started by arguing that this case was neither fish nor fowl, *i.e.* neither criminal nor civil and therefore could not be removed. Case No. 1:22-mc-00096-RC, Dkt. # 5, Motion to Remand at ¶ 10. More recently, ODC started arguing that the case is either civil or criminal (ignoring our position that a bar discipline case in D.C. is a civil-criminal hybrid). Dkt. # 4, p. 6, ¶ 5 (Clerk's

pagination).  Now, in its reply in support of its Second Motion to Remand, ODC comes to a **third position in its roster of shifting positions**: Now Respondent is supposedly wrong that 28 U.S.C. § 1442 (the federal officer removal statute) applies because its application would be "impractical." Dkt. # 6 at 1. But this is not the way statutory construction works. This is not a common law contract dispute subject to the doctrine of impracticability. *See, e.g., W.R. Grace and Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum and Plastic Workers of Am.*, 461 U.S. 757, 768 n.12 (1983).

It is true that statutes can be construed to avoid absurd results but nothing about allowing removal as to disciplinary actions filed against federal officers to federal court is absurd. In any event, the absurd-results canon erects a high bar and ODC cannot meet it. *See, e.g., Sebelius v. Cloer*, 569 U.S. 369, 381 (2013) (need under statute for special masters to occasionally carry out "shadow trials," despite federal government's contrary argument, "is not such an absurd burden as to require departure from the words of the Act."). As in *Sebelius*, the potential need for a disciplinary "hearing" (akin to a trial) in federal district court is similarly not an absurd burden. "[W]hen [a] statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Hartford Underwriters Ins. Co. v. Union Planters Bank*, N.A., 530 U.S. 1, 6 (2000). Section 1442 should be enforced according to its terms.

As we have pointed out before, all the removal does is shift the **locus** of decision-

making from the DCCA and its adjuncts to this Court. That is not impractical. It simply strips ODC of its preferred forum and brings in application of both federal procedural and subject matter jurisdiction rights, including the critical doctrine from *Steel Company v. Citizens for a Better Environment*, 523 U.S. 83 (1998), that subject matter jurisdiction must exist before any merits adjudication can occur—a principle the DCCA and its adjuncts (despite being creatures of federal law) refuse to recognize.

    **4.**    ODC argues that removal is impractical because "in every case where a state asserted its delegated authority to discipline a [federal] government lawyer, the lawyer could remove it to federal court and then attempt to have it dismissed under the doctrine of derivative jurisdiction or some other Rule 12(b)(6) ground." Dkt. # 6 at 2. With all due respect, this assertion is highly confused on multiple grounds.

    *First*, the District is not a State, so resolving this unique case involving the District's powers under 28 U.S.C. § 530B is not going to create a parade of horribles as to the 50 States.

    *Second*, none of the removal jurisdiction briefing to date in either of the cases that should be consolidated has explored "derivative jurisdiction." ODC raising that issue now is premature because the threshold issue is the propriety of the removal under the text of the removal statutes Respondent has invoked. Respondent has not yet filed either a Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6) motion to dismiss. It has not brought its jurisdictional and immunity defenses yet to this Court for resolution.

What is clear now is that ODC cannot anticipate that it is vulnerable to a future Rule 12(b)(1) dismissal and try to use that as a basis to deny the existence of removal jurisdiction under Section 1442.[1] ODC cites no authority to support its argument and, at the very least, such an argument cannot ripen until Respondent acts to file a Rule 12(b)(1) motion to dismiss or the Court orders briefing on that subject *sua sponte*. Respondent is fully amenable to the Court setting a reasonable schedule for the filing of a 12(b)(1) motion to dismiss. Respondent suggests, however, that the Court may wish to first await the filing of a motion to stay this matter that Respondent is working on in light of the closing acts of the House Select Committee on January 6 (*i.e.*, a final report expected December 21, 2022).

*Third*, there is no anomaly at all involved if Respondent, at the right procedural juncture, files a Rule 12(b)(6) or 12(c) motion to dismiss this case based on merits defenses. That is the way cases in federal court work: they are governed by federal rules, no longer by state (or here District) rules. *See, e.g., Hanna v. Plumer*, 380 U.S. 460 (1965) (service rules in federal court applied rather than the state law service rules).

   5.   ODC continues its improper implied-repeal arguments (and its arguments

---

[1] Additionally, note that the doctrine of derivative jurisdiction applies only to Section 1442 removed cases. *See, e.g., McKoy-Shields v. First Washington Realty, Inc.*, Civ. A. No. 11-cv-01419 (RLW), 2012 WL 1076195, *1-*2 (D.D.C. Mar. 30, 2012) (Wilkins, J.). This case was not removed under Section 1442 alone but also under Section 1441, and the dispute over that basis for removal also remains pending before this Court. Congress abrogated derivative jurisdiction in Section 1441 cases. *See* 28 U.S.C. § 1441(f)

for statutory enlargement contrary to *Nichols v. United States*, 578 U.S. 104, 110 (2016)),

claiming that removal should be denied because *Kolibash v. Committee on Legal Ethics of

the West Virginia Bar*, 872 F.2d 571 (4th Cir. 1989), was decided a decade before Section

530B. *See* Dkt. # 6 at 2. But this ignores that *Kolibash* simply construes Section 1442 and

faithfully applies it. Nothing about the passage of Section 530B in 1998 reflects an intent

to repeal Section 1442 in bar discipline cases involving federal lawyers. Moreover, ODC

has no response to the 2011 and 2013 amendments to Section 1442. [Dkt. # 5 at 8].

6.      ODC's attempt to avoid the ban on "drive-by" jurisdiction in *Steel Company*

by arguing that "[t]he significance of all the cases brought in state courts both in the

District of Columbia and elsewhere—including two cases against Presidents—is not that

they confer 'drive-by' jurisdiction, but that no one even contested the obvious jurisdiction

of the state courts," Dkt. # 6 at 2, is also unavailing. The fact that the bar members in those

cases (even Presidents) proves nothing and certainly cannot bind Respondent, who was

not a party to those cases, if that is what Disciplinary Counsel is suggesting. *See Hansberry

v. Lee*, 311 U.S. 32, 40 (1940) ("It is a principle of general application in Anglo-American

jurisprudence that one is not bound by a judgment *in personam* in a litigation in which he

is not designated as a party or to which he has not been made a party by service of

process.").

7.      ODC next argues that if it can show that the procedural preclusion

provisions "simply don't work for disciplinary proceedings," Dkt. # 6 at 2, it can avoid

the Supreme Court instruction that Section 1442 permits the removal of **all cases** against federal officers. *See Willingham v. Morgan*, 395 U.S. 402, 406-07 (1969). ODC can cite no authority for the proposition of law it proposes. And it makes no sense — the substantive point is that all cases against federal officers can be removed. The procedure for doing so in a hybrid matter like a D.C. disciplinary case is a subordinate matter that can be worked out in the adversary process using basic principles of statutory interpretation like harmonization. ODC ignores that harmonization is a proper tool of construction.

8.      ODC then proposes an array of questions to illustrate a more general point that its local procedures are better adapted to disciplinary matters than federal court procedures. *See* Dkt. # 6 at 3. But that proves too much. Any plaintiff preferring to remain in a state or local forum — or any state or local government actor — could always argue that its state or local procedures are better than federal procedures and that is why state or local authorities put them in place. But none of that can be allowed to override the text of Section 1442 or the Supreme Court's construction of that text in a long line of cases, *e.g., Willingham*.

9.      ODC now invokes *District of Columbia v. Carter*, 409 U.S. 418, 420 (1973), to argue that *Carter* requires the District to be counted as a State for purposes of Section 530B. *See* Dkt. # 6 at 3-4. **First**, *Carter* involved constructions of "State" under 42 U.S.C. §§ 1982 and 1983. This case does not involve either of those statutes. **Second**, we have provided several arguments as to why statutory context, including the history of Section

530B, shows that Congress did ***not*** intend to apply Section 530B to States. In the omnibus legislation at issue, Congress specifically defined when it wanted to and did not want to treat the District as a State. ODC has no response to that argument. Instead, it relies on legislative history that is directly contrary to the text of statute, which omits any reference to the District. ***Third***, the driving reason why the Supreme Court decided that Section 1982 applied to the District but Section 1983 did not is that Section 1982 was enacted to enforce the Thirteenth Amendment whereas Section 1983 was enacted to enforce the Fourteenth Amendment. *See Carter*, 409 U.S. at 423. That distinction has no applicability here. Section 530B is legislation that was adopted in the teeth of significant constitutional federalism issues that OLC had long explored and resisted. Section 530B is not designed as constitutional enforcement legislation.

10.     ODC argued that Respondent needed to offer rationales why Congress would want to apply Section 530B to ordinary disciplinary actions against Assistant U.S. Attorneys appearing in state courts or in federal district courts where local rule procedures often mirror to some extent state court procedures, but not to the District of Columbia's courts. There are several answers. ***First***, Respondent is not charged with appearing in or making any appearances in the District's Courts. ODC is arguing that Respondent's mere D.C. Bar membership entitles the DCCA and its adjuncts to regulate the internal operations and deliberations of the Executive Branch while Respondent was serving as a high-ranking lawyer giving advice to the President. ***Second***, it is not

Respondent's burden to explain why Congress defined the District as a State in some parts of the omnibus legislation containing Section 530B. Respondent stands on the text and the *Russello v. United States*, 464 U.S. 16, 23 (1983), canon as applied to omnibus statute. ***Third***, in an attempt to meet ODC's argument that some rationale to support what Congress has done was necessary, Respondent offered several constitutionally based rationales. Thus, it is the ultimate in irony for ODC, having called for such rationales to be proposed, to argue that they are figments of the imagination. *See* Dkt. #6 at 4. It is **ODC *itself*** that demanded that exercise in imagination.

11.    ODC next ventures a response to the arguments Respondent made based on *Chevron*. Again, it does so based on its meritless claim that Respondent must summon up rationales "as to why [Congress] would seem to exempt from § 530B government lawyers who practice in the District." *Id.* at 5. But this is not how *Chevron* works. *Chevron* is based on the ***text of a statute*** and forbids agencies (here the Department of Justice) from construing a statute delegated to their care contrary to statutory text. Respondent does not have to conjure up rationales (even though it did so guided by the *Ashwander v. TVA*, 297 U.S. 288 (1936), principle constitutional avoidance) as to why Congress wrote the text it wrote in order to prevail in calling for applying *Chevron* step one by its terms.

12.    Lastly, ODC attempts to sidestep the proviso in Section 530B(a) "to the same extent and in the same manner as other attorneys in that State," and the implementing regulations proviso in 28 C.F.R. § 77.2(j)(2) (barring discipline where what is involved is a

"jurisdiction that would not *ordinarily* apply its rules of ethical conduct to particular conduct or activity by the attorney") (emphasis added). *See* Dkt. #6 at 5. Here, application of the purported discipline to Respondent is not occurring "to the same extent and in the same manner as other attorneys in" the District (even assuming the District can be counted as a State). And secondly, ODC has pointed to no case *anywhere* (not just in D.C.) in which a state or local bar has tried to discipline an internal Executive Branch legal discussion, especially not one including the President. It is one of statutory construction's most basic principles that statutory and regulatory text cannot be rendered mere surplusage, yet that is exactly what ODC proposes to do with the relevant language in Section 530B(a) and Section 77.2(j)(2).[2]

 ODC tries to argue that Section 530B must be given the non-textual interpretation it prefers because otherwise the DCCA could not enforce its Rule 3.8 concerning special responsibilities of a prosecutor, since some federal lawyers are non-prosecutors. *See* Dkt. #6 at 5. This makes no sense. Section 530B(a) does not require that state bar rules must

---

[2] *See Hibbs v. Winn*, 542 U.S. 88, 101 (2004):

> The rule against superfluities complements the principle that courts are to interpret the words of a statute in context. See 2A N. Singer, STATUTES AND STATUTORY CONSTRUCTION § 46.06, pp. 181–186 (rev. 6th ed. 2000) ("A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant …." (footnotes omitted)).

apply to *all* lawyers or to none. Section 530B(a) just requires that state bar rules be applied equally to federal lawyers and state lawyers. Nor would Section 77.2(j)(2) create such an outcome. It talks about applying rules in a non-ordinary fashion. As far as we are aware, Rule 3.8 is applied to the body of federal prosecutors equally regardless of whether such lawyers are appearing in this Court or in D.C. Superior Court. In any event, even if Rule 3.8 was void for conflict with Section 530B, that is how superior federal law works under the Constitution's Supremacy Clause. It might be unthinkable to Mr. Fox as local Disciplinary Counsel that such a D.C. local rule would need to give way to a federal statute and its regulations; but that is not an unthinkable outcome as a matter of federal statutory and regulatory construction.

## CONCLUSION

ODC filed a motion to enforce a subpoena after (a) that subpoena had already been removed on October 16, 2022; and (b) indeed, after the whole case had been removed on the same date in the same Notice of Removal. ODC is also trying to press ahead, without any authority from the Hearing Committee or Board, to adjudicate the case it filed prior to removal on January 9, 2023, where all indications are that the Board is awaiting this Court's rulings on the removal.

ODC offered no rationale for why it filed its post-removal motion to enforce, necessitating a second removal *and* a second motion to remand. ODC has now been exposed as trying to create two separate cases where there was only one and then quickly

trying to recede from mounting any defense against the motion to consolidate. What stands revealed is that ODC was trying to find a way to put in additional arguments, beyond the briefing allotment, in support of its claim that removal jurisdiction is lacking by filing an *extra* motion to remand accompanied by an *extra* reply brief.

All of this is improper. This Court should consolidate both cases and overrule both the First and the Second Motions to remand.

Respectfully submitted this 19th day of December 2022.

/s/ *Charles Burnham*
Charles Burnham
DC Bar No. 1003464
Burnham and Gorokhov, PLLC
1424 K Street, NW
Suite 500
Washington DC 20005
(202) 386-6920
charles@burnhamgorokhov.com

/s/ *Harry W. MacDougald*
Harry W. MacDougald
Georgia Bar No. 463076
Caldwell, Carlson, Elliott & DeLoach LLP
Two Ravinia Drive, Suite 1600
Atlanta, Georgia 30346
(404) 843-1956
hmacdougald@ccedlaw.com
Admitted Pro Hac Vice  in Case No. 1:22-mc-00096-RC

## CERTIFICATE OF SERVICE

I hereby certify that I have on this day served counsel for the opposing party with a copy of this **Reply In Support of Consolidation** by filing with the Court's electronic filing system and by email addressed to:

> Hamilton P. Fox, Esq.
> Jason P. Horrell, Esq.
> Office of Disciplinary Counsel
> Building A, Room 117
> 515 5th Street NW
> Washington DC 20001
> foxp@dcodc.org
> horrellj@dcodc.org

This 12th day of December 2022.

*/s/ Charles Burnham*
*Charles Burnham*
*DC Bar No. 1003464*

*Burnham and Gorokhov, PLLC*
*1424 K Street, NW*
*Suite 500*
*Washington DC 20005*
*(202) 386-6920*
*charles@burnhamgorokhov.com*